IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| SUNSET HARBOUR YACHT CLUB, INC., | ) ) ) |
| Plaintiff, | ) ) Civil Action No. _____ ) |
| v. | ) Jury Demand ) |
| CONTINENTAL CASUALTY COMPANY | ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff Sunset Harbour Yacht Club, Inc. ("Sunset Harbour") files this Complaint against Defendant Continental Casualty Company ("CNA") and in support thereof states as follows:

## INTRODUCTION

1. Sunset Harbour operates a yacht club in Miami, Florida and offers equity membership interests to club members. These equity memberships may later be sold, and the club is regularly involved in the approval of the purchase and sale of ownership interests. In March 2021, Sunset Harbour agreed to purchase Don and Cheryl Appe's membership for $997,500.00 pursuant to an Equity Yacht Club Membership Resignation and Sale Agreement (the "Agreement").

2. After not receiving the payment amount, the Appes filed a petition for arbitration, styled *Don Appe and Cheryl Appe v. Sunset Harbour Yacht Club, Inc.*, Case No. 1460007570 (the "Appe Arbitration"), with JAMS on June 24, 2021. Sunset Harbour promptly tendered the Appe Arbitration to CNA for coverage.

3. CNA agreed to provide Sunset Harbour with a defense, and agreed to reimburse Sunset Harbour for defense costs incurred by Sunset Harbour's chosen counsel – Mark Krotoski,

Esq. of Morgan Lewis & Bockius LLP.  Not all defense costs, however, have been reimbursed by CNA.

4. Despite the presence of alleged theories of liability that would clearly be covered and subject to no policy exclusion, CNA would not agree to indemnify Sunset Harbour for any corresponding judgment or settlement.

5. Sunset Harbour vigorously defended the Appe Arbitration up and through a final arbitration hearing.  During the course of final hearing, however, it became clear that the evidence suggested negligence on the part of Sunset Harbour.  Rather than risk a possible adverse ruling on the merits and in an effort to limit its ultimate liability to the Appes, Sunset Harbour decided to settle the Appe Arbitration.

6. CNA was fully informed of this resolution, and agreed not to raise lack of consent in relation to the settlement as a defense to coverage.

7. CNA has nevertheless refused to indemnify Sunset Harbour for its portion of the settlement, breaching its coverage obligations to Sunset Harbour.

8. CNA's position is based on an overbroad reading of its own policy exclusions, and its intransigence in the face of evidence suggesting that – no matter the name of the cause of action pled and advanced by the Appes – the Appe Arbitration was about the alleged negligence of Sunset Harbour.

## THE PARTIES

9. Plaintiff Sunset Harbour is a not-for-profit corporation, with its principal place of business in Miami-Dade County, Florida.

10. Upon information and belief, Defendant CNA is incorporated in Illinois, and its principal place of business is in Chicago, Illinois.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over these parties and this dispute pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000.00, exclusive of interests and costs and there is complete diversity among the parties.

12. The Court has personal jurisdiction over CNA because CNA is an active insurer in Florida, CNA transacts insurance business in Florida, the insurance policy described herein was issued by CNA to Sunset Harbour in Florida, and this dispute arises out of CNA's wrongful denial of an insurance claim regarding conduct in Florida.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, in that the Appe Arbitration, which forms the basis of the instant insurance claim, arose out of alleged errors and omissions that Sunset Harbour committed in Miami-Dade County, Florida.

14. Alternatively, venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(3) because CNA is subject to the Court's personal jurisdiction with respect to this action.

## FACTS

### The Insurance Policy

15. CNA provides Not for Profit Directors and Officers and Entity Liability Insurance (the "D&O Coverage Part") to Sunset Harbour, the named insured, through Policy No. 425179978, which was issued on a claims made basis and effective from July 15, 2020 to July 15, 2021 (the "Policy").  A true and correct copy of the Policy is attached hereto as **Exhibit A** and is incorporated herein by reference.

16. The D&O Coverage Part has a $5,000,000 aggregate Limit of Liability and an applicable per claim Retention of $10,000.  Defense costs erode the retention and Limit of Liability. *See* Exhibit A at D&O Coverage Part, Declarations, Items 5 and 10.

17. Pursuant to the Policy's D&O Coverage Part, CNA agreed to "pay loss on behalf of an insured entity arising from a claim against such insured entity first made during the policy period." *See id.* at Section I,[1] Insuring Agreement.  CNA also agreed to "pay defense costs on a current basis, but no later than ninety (90) days after [it] ha[s] received any invoice or bill, as well as any additional supporting documentation that we have reasonably requested." *See id.* at Section VIII, Defense Costs and Advancement.

18. The Policy defines the "insured entity" to mean the named insured or any subsidiary. *See id.* at General Terms & Conditions, Section III, Definitions.

19. The Policy defines "Loss" to mean "the amount you are legally obligated to pay as a result of a claim including compensatory damages, settlements, judgments, pre-judgment and post-judgment interest, claimants' attorney fees and costs attributable to the covered portion of a

---

[1] Unless otherwise indicated, all citations to "Sections" in the Policy refer to the D&O Coverage Part.

settlement or imposed as a result of a covered judgment, and defense costs. Loss will include crisis event expenses and pre-claim expenses." *See id.* at Section III, Definitions.

20. The Policy defines "Claim" to include, among other things, a "written demand (excluding a subpoena) for monetary, non-monetary, injunctive, or declaratory relief including a request for alternative dispute resolution" and a "civil or criminal proceeding commenced by the earlier of: (a) the return of service of a complaint or indictment upon an insured; (b) the filing of an indictment or information with respect to an insured; or (c) the arrest or detainment of an insured . . . against such insured for a wrongful act, including any appeal therefrom." *See id.*

21. The Policy defines "Defense costs" as "the reasonable and necessary fees, costs, and expenses, incurred by an insured in the investigation, defense, or appeal of any covered claim, including the premium for appeal, attachment, or similar bonds arising out of a covered judgment. Defense costs do not include overhead expenses." *See id.*

22. The Policy defines "Wrongful act" to mean any "error, misstatement, misleading statement, act, omission, neglect, or breach of duty, (including personal injury or publisher injury) committed, attempted or allegedly committed, or attempted, by: (a) an Insured person in his/her capacity as such; or (b) an Insured entity; or . . . matter claimed against an Insured person solely by reason of his/her status as such." *See id.*

23. All necessary premiums required by the Policy have been paid, and Sunset Harbour has complied with any and all other conditions of the Policy, or such conditions have been waived by word or action of CNA.

**Sunset Harbour's Timely Tender of the Claim and CNA's Response**

24. On June 24, 2021, Sunset Harbour tendered to CNA a petition for arbitration, styled *Don Appe and Cheryl Appe v. Sunset Harbour Yacht Club, Inc.* (the "Appe Arbitration") filed with

JAMS on January 26, 2022, Case No. 1460007570.  A copy of the initial arbitration petition is attached hereto as **Exhibit B**.  The original petition alleged Sunset Harbour breached the Agreement to purchase the Appes' membership for $997,500.00 because the Appes claimed to have never received the payment amount.

25. On October 25, 2021, CNA acknowledged that it received the June 24, 2021 petition, and agreed to retain defense counsel and pay defense costs, but "note[d] that for loss other than defense costs, coverage is not afforded."  A true and correct copy of the October 25, 2021 Letter is attached hereto as **Exhibit C** and is incorporated herein by reference.

26. On or around January 26, 2022, Sunset Harbour tendered an amended petition for arbitration, which set forth causes of action for (1) breach of contract, (2) negligence, and (3) gross negligence.  A true and correct copy of the amended petition is attached hereto as **Exhibit D** and is incorporated here by reference.

27. On May 6, 2022—over four months after Sunset Harbour's prompt notice of the amended petition—CNA provided a supplemental coverage position letter. A true and correct copy of the May 6, 2022 Letter is attached hereto as **Exhibit E** and is incorporated herein by reference.

28. In the May 6, 2022 letter, CNA stated that it "will provide a defense to the insured for this matter, but reserves the right to deny coverage, in whole or in part, for any loss incurred in connection with the [Appe Arbitration] other than defense costs." *See* Exhibit E at p. 3.

## The Appes' Allegations and Negligence Based Legal Theory

29. Even before the amendment of the Appes' claims, the focus of the Appes' case was negligence, not breach of contract, as the Appes theorized they were not paid because the funds were misdirected after an unaffiliated third party/hacker intercepted an email sent by the Appes and proceeded to facilitate a fraudulent payment using a similar (but fraudulent) email address.

30. For example, as shown in the side-by-side comparison set forth below, both the breach of contract claim and negligence claim are based on Sunset Harbour's duty to pay the Appes and failure to pay the Appes due to payment to an unaffiliated third party/hacker:

| Appe Arbitration's Negligence Claim | Appe Arbitration's Breach of Contract Claim |
|---|---|
| "Sunset had a ***duty*** to use reasonable care in ***disbursing money to the Appes***. Sunset breached its duty ***by sending the Appes' monies to the Hacker***. Sunset's breach of duty caused the Appes to incur damage."<br><br>*See* Exhibit D ¶¶ 29-31 (emphasis added). | "[Sunset] was ***obligated*** to ***pay the Purchase Amount to the [Appes]***. [Sunset] failed to pay the Purchase Amount to the [Appes]. [Sunset] ***paid the Purchase Amount to one or more persons unaffiliated with the [Appes]*** instead of paying the Purchase Amount to the [Appes]. In failing to pay the [Appes] the Purchase Amount, [Sunset] breached the Agreement."<br><br>*See* Exhibit D ¶ 8-11 (emphasis added). |

31. Likewise, as shown in the side-by-side comparison set forth below, both the breach of contract claim and gross negligence claims are, likewise, based on Sunset Harbour's duty to pay the Appes and failure to pay the Appes due to payment to an unaffiliated third party/hacker:

| Appe Arbitration's Gross Negligence Claim | Appe Arbitration's Breach of Contract Claim |
|---|---|
| "Sunset had a ***duty*** to use reasonable care in ***disbursing money to the Appes***. Sunset breached its duty ***by sending the Appes' monies to the Hacker***. Sunset's conduct was so reckless or wanting [sic] in care that it constituted a conscious disregard or indifference to the rights of the Appes. Sunset's gross breach of duty caused the Appes to incur damage."<br><br>*See* Exhibit D ¶¶ 32-36 (emphasis added). | "[Sunset] was ***obligated*** to ***pay the Purchase Amount to the [Appes]***. [Sunset] failed to pay the Purchase Amount to the [Appes]. [Sunset] ***paid the Purchase Amount to one or more persons unaffiliated with the [Appes]*** instead of paying the Purchase Amount to the [Appes]. In failing to pay the [Appes] the Purchase Amount, [Sunset] breached the Agreement."<br><br>*See* Exhibit D ¶ 8-11 (emphasis added). |

**The Arbitration and the Evidence of Negligence**

32. A trial was held in the Appe Arbitration during the week of June 13, 2022. The trial lasted four days, and each side called multiple witnesses.

33. During the course of trial, the Appes presented evidence in support of their negligence claim against Sunset Harbour.

34. Also during trial, Chase Bank, N.A. discovered $490,343.93 previously missing as a result of the fraudulent wire instructions. Sunset Harbour has since authorized disbursement of those funds to the Appes.

35. Together with the evidence presented at trial, it became clear that Sunset Harbour may be found liable for negligence.

36. To avoid the likely adverse ruling on the merits and in an effort to limit its ultimate liability to the Appes, Sunset Harbour decided to settle the Appe Arbitration.

37. The parties settled and stipulated to the entry of an arbitration award. A true and correct copy of the stipulated final award is attached hereto as **Exhibit F** and incorporated herein by reference.

38. The award was based on the evidence deduced by the parties during the arbitration hearing.

39. The award found Sunset Harbour not liable for breach of contract, but liable for negligence.

40. Specifically, with respect to breach of contract, the award found that "it was undisputed that the [Appes] never designated in writing the account for the payment by wire transfer and that if the [Appes] had contacted Sunset Harbour before the wire transfers, the two fraudulent wire transfers would have been detected." *See* Exhibit F at ¶ 4.

41. Based on this finding, the award found that "[b]ecause the [Appes] failed to perform a condition precedent in the contract, recovery for breach of contract against [Sunset Harbour] is precluded." *Id.* at ¶ 5.

42.     As for the negligence and gross negligence counts, the award found that "evidence was presented in support of" those claims "including negligent acts by Sunset Harbour's outside corporate counsel Raul Puig in failing to confirm the identity of the Sellers, among other acts." *Id.* at ¶ 6.  And, "[b]ased on the evidence presented at the [arbitration], the Parties agreed that an Award of $1,175,000 is payable from [Sunset Harbour] to the [Appes] solely on the negligence and gross negligence claims." *Id.* at ¶ 7.

43.     Because CNA was in breach of its obligations to Sunset Harbour, its consent to the settlement was not required.  Nevertheless, Sunset Harbour kept CNA informed as to settlement opportunities, and repeatedly requested that CNA agree to contribute to a settlement on Sunset Harbour's behalf.

44.     Prior to the resolution of the Appe Arbitration, CNA was informed of the proposed resolution, and agreed not to raise lack of consent in relation to the settlement as a defense to coverage.

## **CNA's Coverage Position**

45.     CNA's coverage position principally relies on the "Contractual Liability Exclusion" contained in the Policy. *See* Exhibit C at p. 2; Exhibit E at p. 3.

46.     By its terms, however, the "contractual liability" exclusion does not apply to the Appe Arbitration or the award entered following the trial.

47.     The "Contractual Liability Exclusion" only applies to Loss "in any connection with any claim . . . against an insured entity that is based upon or arising from . . . contractual liability; provided this exclusion . . . will not apply to defense costs." *See* Exhibit A at Section IV, Coverage Part Exclusion, subsection (b)(i).

48. The Policy defines "contractual liability" as "your actual or alleged liability voluntarily undertaken by you in any contract or agreement. ***Contractual liability does not include liability that would be imposed by you in the absence of such contract or agreement***." *See id.* at Section III, Definitions (emphasis supplied).

49. When a breach of contract claim against an insured is based on the exact same alleged conduct as a negligence claim, the insured's liability would be imposed even "in the absence of [a] contract or agreement". *See id.* (quoting the contractual liability exclusion).

50. Given that the Appe Arbitration was always the alleged negligence and breaches of common law duties of care at the heart of the theft of the Appes' funds, the contractual liability exclusion cannot act as a bar to coverage for the award.

51. From the start, Sunset Harbour has asserted that the Appe Arbitration extends beyond defense costs and covers any damages related to any inadvertent errors or neglect on Sunset Harbour's part.

52. The arbitration award clearly imposes liability for negligence on Sunset Harbour, and absolves Sunset Harbour for any liability for breach of contract.

53. Nevertheless CNA has persisted and continues to maintain its wrongful and unjustified coverage position that "any loss incurred in connection with the [Appe Arbitration] other than defense costs" is not covered. *See* Exhibit C at p. 2; Exhibit E at p. 3.

54. CNA also cites to "Section IV.A.(viii) of the D&O Coverage Part which provides the Policy will not cover loss in connection with any claim based upon or arising from a cyber event[.]" *See* Exhibit C at p. 2; Exhibit E at p. 3.

55. The Policy defines "cyber event" as "any actual or alleged (i) exploit; (ii) unauthorized access or use; (iii) network impairment; or (iv) failure to implement, maintain, or

comply with federal, state, or local law, statute or regulation, or an insured entity's internal written policies and procedures, with respect to protected information." *See* Exhibit A at Section III, Definitions.

56. The unwitting use of fraudulent wire instructions, however, is not a "cyber event" as defined in the Policy.

57. Sunset Harbour has paid or incurred substantial sums in satisfaction of its obligations under the award and settlement, which CNA is obligated to pay under the terms of the Policy. Sunset Harbour has also paid defense costs that CNA is obligated to pay under the terms of the Poliicy.

58. All conditions precedent to coverage under the Policy, including the payment of any premium amounts owed, have been satisfied or otherwise waived, and Sunset Harbour has not excused CNA's non-performance.

59. Sunset Harbour has retained the undersigned as counsel in this action, and agreed to pay attorneys' fees and costs incurred in connection with this action.

## COUNT I – BREACH OF CONTRACT

60. Sunset Harbour incorporates the allegations in paragraphs 1 through 59 by reference as if set forth fully herein.

61. The Policy is a valid and enforceable insurance contract.

62. Sunset Harbour has performed all of its obligations under the Policy, and any and all conditions precedent to its rights under the Policy have been satisfied or waived.

63. Under the terms of the Policy, CNA agreed to "pay loss on behalf of an insured entity arising from a claim against such insured entity first made during the policy period."

64. The final award and settlement entered in the Appe Arbitration is covered as "Loss," as that term is defined in the Policy. "Defense costs" are also considered "Loss" under the Policy.

65. CNA has breached the Policy by failing and/or refusing to indemnify Sunset Harbour for the stipulated final award in the Appe Arbitration. CNA has also breached the Policy by failing and/or refusing to pay Sunset Harbour for its covered defense costs on a current basis.

66. No exclusions, conditions, or other provisions in the Policy excuse CNA's non-performance.

67. Sunset Harbour has not otherwise excused CNA's non-performance.

68. As a result of CNA's breach, Sunset Harbour has been denied the benefits of insurance coverage to which it is entitled as an insured under the Policy.

69. Sunset Harbour has suffered actual damages as a result of CNA's breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Sunset Harbour, by and through undersigned counsel, requests judgment against CNA and in favor of Sunset Harbour for:

(i)  compensatory damages for breach of the Policy in an amount to be determined at trial;

(ii)  all reasonable and necessary attorney's fees and costs incurred by Sunset Harbour in this matter pursuant to section 627.428, *Florida Statutes*; and

(iii)  pre-judgment and post-judgment interest at the maximum allowable rate.

## **JURY DEMAND**

Sunset Harbour hereby demands a trial by jury as to all issues so triable.

Dated: October 20th, 2022

                                            Respectfully submitted,

                                            */s/ Matthew B. Weaver*
                                            **Matthew B. Weaver**
                                            Florida Bar No. 42858
                                            mweaver@reedsmith.com
                                            iromero@reedsmith.com
                                            **Jessica E. Gopiao**
                                            Florida Bar No. 1011789
                                            jgopiao@reedsmith.com
                                            iromero@reedsmith.com

                                            **REED SMITH LLP**
                                            200 S. Biscayne Blvd., 26th Floor
                                            Miami, FL 33131
                                            Tel: 786-747-0200
                                            Fax: 786-747-0299

                                            *Counsel for Sunset Harbour Yacht Club, Inc.*